**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1454-BF (L) |
| | § | |
| **JOYCE A. RINEER and ROSE** | § | |
| **WASHINGTON,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

This is a consent case before the United States Magistrate Judge. The Motion for Summary Judgment of Plaintiff United States of America ("United States" or "Plaintiff"), filed September 30, 2008, is before the Court for consideration. The Court has considered the motion; Defendant Rose Washington's ("Washington") Memorandum in Response, filed October 19, 2008; Plaintiff's Reply, filed November 3, 2008; Defendant Joyce A. Rineer's ("Rineer") Response, filed November 7, 2008; and Plaintiff's Reply, filed November 20, 2008.

This case involves two Internal Revenue Service assessments made pursuant to 26 U.S.C. § 6672.[1] One assessment, involving the last two quarters of 1997 and all four quarters of 1998, was

---

[1] 26 U.S.C. § 6672 provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

The word "person" is defined in § 6671:

The term "person," as used in this subchapter includes an officer or

entered against Washington and Rineer in the amount of $492,980.84. The other assessment, involving the third and fourth quarters of 1997, was entered against Washington and Rineer in the amount of $89,347.71. Thus, the total assessed against Washington and Rineer was $582,328.55. Rineer has made payments to the Internal Revenue Service in the amount of $759.00. (Pl.'s Compl. at ¶ 11. These assessments were made by the Commissioner of Internal Revenue because payroll taxes which were withheld from the wages of the employees of Washington's and Rineer's two companies, Specialty Care Inc. ("Inc.") and Specialty Care Enterprises ("Enterprises"), were not paid over to the United States. Plaintiff seeks judgment against Washington and Rineer, contending they are liable to the United States as a matter of law for the unpaid employee withholding taxes, plus interest and other statutory additions.

**Standard of Review**

Summary judgment is appropriate if the pleadings and summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Prop., Inc. v. Potomac Ins. Co. of Ill.,* 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex,* 477 U.S. at 322-25).

---

employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

2

The moving party may meet its initial burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325. If the movant fails to meet its initial burden, the motion must be denied, irrespective of the non-movant's response. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings that are unsupported by specific facts presented in affidavits opposing the motion for summary judgment. *See* FED. R. CIV. P. 56(e); *Lujan,* 497 U.S. at 888; *Hightower v. Texas Hosp. Ass'n,* 65 F.3d 443, 447 (5th Cir. 1995). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247.

## Undisputed Material Facts

Neither Washington nor Rineer has disputed the following material facts:

Rose Washington and Joyce Rineer (formerly Joyce McClaine), both longtime registered Nurses, decided to go into business together and started. Inc. in 1988 to place nurses at hospitals. (Washington Deposition ("W.") App. 6 & 15, Rineer Deposition ("R.") App. 72.)[2] Washington and Rineer started their second company, Enterprises, in 1994 to provide nurses, physical therapists, social workers, etc. for home health care. (W. App. 7, 29 & 30.) The companies used the same offices and in many ways operated as one company. (W. App. 11.) After the companies ran into financial difficulties, including not paying their payroll taxes, Washington and Rineer jointly

---

[2] App. Refers to Plaintiff's Appendix. A condensed copy of the deposition of the companies' controller, Janie Heggins, taken on July 16, 2008 is attached as App. 103 - 129. All references to her deposition will be "Heg. App."

3

decided to close the companies. (R. App. 61, 62 & 77; W. App. 12.)

Washington and Rineer each owned 50% of the stock of both companies. (W. App. 12 & 15; R. App. 65, 67, 71 and 85; Heggins Deposition ("Heg.") App. 108 & 109). Rineer was the president of Inc. and the vice-president of Enterprises, while Washington was the president of Enterprises and the vice-president of Inc. (R. App. 74.) They were the only two members of the boards of directors for the companies (R. App. 78.) and the only individuals who could negotiate contracts for the companies (Heg. App. 111).

Both Inc. and Enterprises eventually encountered severe financial difficulties. In fact, as early as 1994, Inc. experienced payroll tax problems. (R. App. 62.) While those taxes were eventually paid, starting in 1997 both Inc. and Enterprises incurred payroll tax liabilities that were never paid. Inc. had unpaid payroll taxes for the last two quarters of 1997 and all four quarters of 1998. As a result, pursuant to § 6672, both Washington and Rineer were assessed for Inc.'s unpaid trust fund taxes for those six quarters in the amount of $492,980.84. Enterprises had unpaid payroll taxes for the last two quarters of 1997. Washington and Rineer were assessed, pursuant to § 6672, for Enterprises' unpaid trust fund taxes for those two quarters in the amount of $89,347.71. Thus, the total assessed against Washington and Rineer was $582,328.55.

Rineer learned that there were unpaid payroll taxes again in 1996. (R. App. 66; IRS Form 843, App. 132.) Washington knew of the unpaid payroll taxes in 1996 or 1997, but she continued to receive a salary after that time. (W. App. 11.) In 1998, Rineer was told the companies owed "a million dollars in taxes." (R. App. 65.) Rineer admitted that paying the nurses in her employ took priority over paying the taxes. (R. App. 89.) Inc. and Enterprises went out of business at the same time. (W. App. 12.)

4

Rineer filled out a Form 4180 "Report of Interview with Individual Relative to 100-Percent Penalty Recommendation" concerning Enterprises. (App. 133 - 140.) At her deposition, she testified that her answers would have been the same for Inc. (R. App. 66 - 67.) During her interview with the IRS and again at her deposition, Rineer admitted she had the authority to: hire, fire and manage employees; direct the payment of bills; deal with major suppliers and customers; negotiate large corporate purchases, contracts, and loans; open and close corporate bank accounts; sign checks and make bank deposits; guarantee corporate bank loans; authorize payroll checks; prepare and sign federal payroll tax returns; authorize federal tax deposits; review federal income tax returns; and determine company financial policy. (R. App. 67, 135 & 136.)

Washington signed Inc.'s Form 941 for the quarter ended September 30, 1997 on October 31, 1997. That return shows that no tax deposits were made and reflects a balance due of $210,634.25. (W. App 13.) Washington admitted that the taxes shown as due on that return were not paid. (W. App. 13 & 18.) Therefore, at the absolute latest, she knew of the unpaid taxes by October 31, 1997. (App. 141 - 146.) Washington admitted she knew of the unpaid taxes before being contacted by the IRS. (W. Dep. 51.) Washington authorized one of her employees to sign her name to Inc.'s Form 941 for the period ended December 31, 1997. Again, no tax deposits were made during that quarter. That return reflects a balance due of $146,899.89. (W. App. 13 & 142.) Washington also signed Inc.'s Form 941s for all four quarters in 1998. Each of those returns reflected a balance due. The amounts due ranged from $55,475.62 to $228,382.57. (W. App. 14 & 143 - 146.) Washington listed her title on some of these returns as vice-president. (W. App. 14.) She also admitted she was the vice-president at an interview with the IRS and on other documents she signed. (W. App. 15 & 19.)

Washington signed Enterprises' Form 941 for the quarter ended December 31, 1997. (A copy of this return is attached as App. 147.) That return reflects a balance due of $72,674.76. (W. App. 14 & 147.) Washington also signed Enterprises' and Inc.'s Forms 1120, Income Tax Returns. (W. App. 21 - 22.) (These returns are attached as App. 148 - 154).

Washington and Rineer supervised the companies' in-house controller, Janie Heggins. (W. App. 34.) Washington had hired Ms. Heggins originally and later fired her. (Heg. App. 106 - 107.) Ms. Heggins was employed by the companies for all the periods at issue in this case. (Heg. App. 106.) She testified that she considered Washington to be the companies' ultimate decision maker, with Rineer being number two in the chain of command. (Heg. App. 116.)

Notwithstanding the companies' failure to pay their payroll taxes, Washington and Rineer paid themselves a salary from Inc. in 1997 of $104,000 each. (The 1997 Form 1120 for Inc. is attached as App. 155 - 160). Washington and Rineer admitted that employees (including themselves) and other creditors were paid after they knew of the unpaid payroll taxes. (W. App. 17, 23 & 24; R. App. 79.) Rineer admitted that she was paid her salary for 1997 after learning of the unpaid payroll taxes. (R. App. 68.) While she strongly contended at her deposition that she did not receive ("one penny") of salary in 1998 (R. App. 68, 69, & 84), her 1998 income tax return reveals that she received a salary of $80,000 from Inc. (A copy of the relevant portions of her 1998 Form 1040, including the Form W-2 from Inc. is attached as App. 161 - 163). Washington and Rineer both had the authority to hire and fire employees. (W. App. 15 & 26; R. App. 79.) Washington and Rineer could both decide which creditors to pay. (W. App. 15, R. App. 80, Heg. App. 123 - 125.) They were the only two authorized check-signers. (R. App. 76.) They signed the payroll checks and made the tax deposits, when they were made. (Heg. App. 109 - 110.) Rineer

6

conceded that paying employees was more important to her than paying taxes. (R. App. 74 - 75.) Rineer and Washington jointly decided how much to pay themselves. (R. App. 75.) They always received the same salary and were the two highest-paid employees. (R. App. 75.) Both Washington and Rineer were timely and properly assessed, on April 7, 1999, for both companies and each quarter at issue. (Certified Certificates of Assessments, Payments, and Other Specified Matters showing the assessments for both Washington and Rineer for each company are attached as App. 164 - 184).[3] As stated previously, they were each assessed $582,328.55. On March 31, 1999, Rineer signed IRS Forms 2751 (App. 186 & 187) agreeing to the assessment and collection of the § 6672 assessments.

## **Analysis**

Although both Washington and Rineer contend that material facts are in dispute in this case, they fail to show what those material facts are or how they are disputed. Neither Washington nor Rineer has disputed any of the material facts set forth by the United States with respect to their roles and responsibilities with Inc. and Enterprises.[4] Therefore, the undisputed material facts are conclusively established. *See C.F. Dahlberg & Co. v. Chevron U.S.A., Inc.*, 836 F.2d 915, 920 (5th Cir. 1989). The United States has provided documentation showing the exact amount of the assessments that Washington and Rineer owe. The only change is that the amount of the

---

[3] Assessments supported by Form 4340s, such as these, are presumptively valid. *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992).

[4] The "facts" disingenuously cited by Rineer at pages three and four of her opinion are not facts at all. The Court of Federal Claims made no findings in *Rineer v. United States*, 79 Fed. Cl. 765 (2007), a case in which Rineer filed a refund claim with the Internal Revenue Service. Rineer voluntarily dismissed that refund claim to allow this case to proceed.

7

assessments continue to accrue interest as a matter of law until they are paid.

Washington and Rineer argue that they have not acted willfully because somehow the United States caused their failure to pay the taxes when they were due. They claim Medicare was slow in paying for services that Inc. and Enterprises rendered. Also, they contend that changes in the Medicare reimbursement procedures made by Congress eleven years ago would be a reasonable cause to excuse their liability for the taxes because they did not have enough money to pay the taxes as well as their other obligations, ones that they considered to be more pressing.

The burden of proof is on Washington and Rineer. *See Liddon v. United States*, 448 F.2d 509, 513-14 (5th Cir. 1971). They fall far short of meeting that burden. The argument they make has never prevailed in the Fifth Circuit Court of Appeals, and the Ninth Circuit Court of Appeals specifically rejected it in a criminal case of willful failure to pay taxes. *United States v. Easterday*, 539 F.3d 1176, 1181 (9th Cir. 2008)(holding a defendant who tried to blame changes in the medicaid reimbursement policies criminally liable for willfully failing to pay trust fund taxes). In *United States v. Tucker,* 686 F.2d 230 (5th Cir.1982), a prosecution for willfully failing to pay income taxes, under 26 U.S.C. § 7203, the defendant argued that he could not pay the taxes when they were due because he had no assets to satisfy the debt and that his failure to pay was not willful. The Fifth Circuit stated:

> This argument borders on the ridiculous.... [A] financial ability to pay the tax when it comes due is not a prerequisite to criminal liability under § 7203. Otherwise, a recalcitrant taxpayer could simply dissipate his liquid assets at or near the time when his taxes come due and thereby evade criminal liability.

*Id.* at 233. The same holds true for employee withholding taxes. The "reasonable cause defense to a section 6672 action is exceedingly limited . . ." and "may not be asserted by a responsible person who knew that the withholding taxes were due, but who made a conscious decision to use

8

corporate funds to pay creditors other than the government." *Logal v. United States,* 195 F.3d 229, 233 (5th Cir. 1999) (holding that a responsible party cannot escape liability by shifting the blame to others).

Applying Fifth Circuit law to the undisputed material facts the Court finds and orders as follows:

Joyce Rineer and Rose Washington were responsible persons of Specialty Care, Inc. for each quarter from the third quarter of 1997 through the fourth quarter of 1998 and they both acted willfully in failing to pay over the employment taxes of Specialty Care, Inc.

Joyce Rineer and Rose Washington were responsible persons of Specialty Care Enterprises for the third and fourth quarters of 1997 and both Joyce Rineer and Rose Washington acted willfully in failing to pay over the employment taxes of Specialty Care Enterprises for the third and fourth quarters of 1997.

The Motion for Summary Judgment of the United States of America is GRANTED against both Joyce Rineer and Rose Washington.

**IT IS ORDERED** that Joyce Rineer is indebted to the United States for $581,359.55[5] plus interest and all statutory additions thereon as provided by law.

**IT IS ORDERED** that Rose Washington is indebted to the United States for $581,359.55 plus interest and all statutory additions thereon as provided by law.

**IT IS ORDERED** that the liabilities of Joyce Rineer and Rose Washington to the United States are joint and several.

---

[5] To date, Rineer has made payments to the Internal Revenue Service in the amount of $759.00. Washington and Rineer are jointly and severally liable for the unpaid taxes. Accordingly, the amount owed by Washington is reduced in accordance with Rineer's payment.

**IT IS FURTHER ORDERED** that each side to this action is to bear its own costs, including any attorney fees.

Signed January 5, 2009.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE